UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KIM THOMAS O/B/O N.T.,

                Plaintiff,                03 Civ. 3980 (RJH)(DF)

      - against -                  **MEMORANDUM OPINION**
                                                    **AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Plaintiff Kim Thomas brings this action on behalf of her daughter, N.T., to challenge a

decision of the Commissioner of Social Security denying N.T.'s application for surviving child

insurance benefits under the Social Security Act (the "Act").  The case turns on whether N.T. is

the child of deceased wage earner Ronald Van Thomas ("Thomas"), a question that an

administrative law judge ("ALJ") answered in the negative in a decision that later became the

final decision of the Commissioner.  Magistrate Judge Debra Freeman issued a comprehensive

report and recommendation (the "Report"), familiarity with which is presumed, recommending

that the Court reverse the Commissioner's decision and remand for benefits calculation.  The

Commissioner filed timely objections to the report on two grounds: (1) contrary to the Report,

substantial evidence supported the ALJ's finding that a DNA test showing a 99.69% probability

of paternity was not clear and convincing evidence that Thomas was N.T.'s father; and (2) the

Report erred in failing to consider the ALJ's conclusion that plaintiff did not rebut the legal

presumption that N.T. was the biological child of a different man, plaintiff's ex-husband.

Having conducted a *de novo* review of the relevant portions of the Report, the Court adopts Judge Freeman's conclusions and remands to the Commissioner for benefits calculation.

## DISCUSSION

**I.**     **Standards of Review**

**A.**     **Review of the Magistrate Judge's Report**

A district court may designate a magistrate to hear certain motions and to submit a report and recommendation as to how the Court should resolve the motions.  *See* 28 U.S.C. § 636(b)(1) (2005).  Within ten days of service of the recommendation, any party may file written objections. *Id.*  In evaluating the magistrate's report, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *see, e.g., Eisenberg v. New England Motor Freight*, *Inc.*, 564 F. Supp. 2d 224, 226-27 (S.D.N.Y. 2008).  "If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."  *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007) (citations omitted).  Where a party makes "merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition," the court reviews for clear error.  *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006) (internal quotation marks and citations omitted).  Parties may not "attempt to relitigate the entire content of the hearing … [and] are not to be afforded a 'second bite at the apple . . . .'"  *Carmardo v. General Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992).

### B.      Review of the ALJ Decision

A federal district court reviewing and ALJ decision in a social security appeal looks to whether the correct legal standards were applied and whether the agency's factual determinations are supported by "substantial evidence." *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007) (citing *Pollard v. Halter*, 377 F.3d 183, 188 (2d Cir. 2004)); s*ee, e.g., Jordan v. Comm'r of Soc. Sec.*, 194 F. App'x 59, 61 (2d Cir. 2006) (citing *Urtz v. Callahan*, 965 F. Supp. 324, 326 (N.D.N.Y. 1997)).  Substantial evidence is "more than a mere scintilla" of evidence.  *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Jordan*, 194 F. App'x. at 61 ((quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

Review of the ALJ's legal conclusions is *de novo*.  *Pollard*, 377 F.3d at 188; *see also Rivera v. Sullivan*, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991) (observing that "with respect to . . . legal conclusions, or more generally . . . application of legal principles, judicial review is *de novo*").

## II.      Plaintiff is permitted to proceed pro se on behalf of her child

Before reaching the merits, the Court considers whether Ms. Thomas may bring this action *pro se* on behalf of her daughter.  Although a litigant may represent herself in federal court, *Machadio v. Apfel*, 276 F.3d 103, 106 (2d Cir. 2002), "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."  *Cheung v. Youth*

*Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir. 1990).  A district court has a duty to

raise this issue *sua sponte.  Berrios v. N.Y. City Hous. Auth.*, 564 F.3d 130, 133 (2d Cir. 2009)

(citing *Wenger v. Canastota Cent. School Dist.*, 146 F.3d 123, 125 (2d Cir. 1998), *overruled on

other grounds by Winkelman v. Parma City School Dist.*, 550 U.S. 516 (2007)).  However, if a

district court, after an "appropriate inquiry in to the particular circumstances of the matter at

hand," determines that the non-attorney parent has a "significant stake in the outcome of the

litigation," a parent may bring an action in federal court on behalf of their child without an

attorney.  *See Machadio,* 276 F.3d at 107.  Here, the Social Security Administration would most

likely pay N.T.'s benefits to Ms. Thomas as N.T.'s "representative payee."  *See id.* at 106

(holding that as the natural parent with custody, plaintiff was most likely the one that would

receive Social Security benefits for child, and could therefore represent the child in court).  Any

money received by N.T. would lighten Ms. Thomas's burden of caring for N.T. and increase the

availability of money for other expenses in the family household.  The Court therefore finds that

the plaintiff has a sufficient interest to represent her daughter *pro se* in federal court.

## III.     The ALJ's decision is not supported by substantial evidence

The Commissioner argues Judge Freeman erred in finding a lack of substantial evidence

for the ALJ's conclusion that the DNA test result did not constitute clear and convincing

evidence of Thomas's paternity.  The Commissioner contends that evidence of deficiencies in the

chain of custody of the DNA samples amply supported the ALJ's determination.  This argument,

however, presupposes that the ALJ in fact based his decision on the supposed gaps in the chain

of custody, a proposition that the text of the decision calls into doubt.  Before considering the

chain of custody, the ALJ found that the DNA test was invalid because it was not performed

during Thomas's lifetime.  (R. at 124.)  Defendant concedes that this was legal error; New York

law does recognize posthumous DNA tests as "clear and convincing" evidence of paternity in circumstances such as these.  (*See* Report at 14; Def. Obj. at 5 n.3.)  From the text of the ALJ decision, it is impossible for the Court to conclude that, but for this legal error, the ALJ still would have found the DNA test to be of "[in]sufficient probative value to establish paternity." (R. at 124.)  The decision contains only one paragraph on the issue, which first finds the test inadmissible as posthumous, and second, as something of an afterthought, opines that the DNA samples' chain of custody is infirm.  Had the ALJ not erred in his application of New York law, he may well have found the DNA test to be "clear and convincing" evidence despite concerns over the chain of custody.

Even standing alone, however, the ALJ's two sentences of findings about gaps in the chain of custody are insufficient to support the decision that N.T. was not Thomas's child.  The briefing record contains much discussion about the test's admissibility—specifically, whether it could be admitted as a lab-certified DNA test under N.Y. C.P.L.R. § 4518(d)-(e).  But defendant rightly points out in its objections that the salient issue concerning the chain of custody is "not one of admissibility, but of the weight to be accorded the [DNA] evidence."  (Def. Obj. at 5.) The ALJ could consider the DNA test whether or not it was admissible under New York evidence rules.  *See* 42. U.S.C. § 405(b)(1) (2008).  The question is whether the DNA test is sufficiently persuasive to constitute "clear and convincing" evidence of paternity, despite any problems in the chain of custody.

Defendant, having recognized that the issue is not one of formal admissibility, nonetheless submits a formalistic argument: that the ALJ's decision to disregard the DNA test should be upheld because (1) Micro Diagnostics (the testing laboratory) did not submit a chain of custody affidavit describing the handling of plaintiff's and N.T.'s DNA samples; and (2) the

New Jersey Toxicology Laboratory submitted an incomplete chain of custody letter that failed to explain how it acquired and stored Thomas's sample. (Def. Obj. at 6.) This argument is formalistic because it questions the propriety of the evidence without actually challenging the persuasive force of the test result showing a 99.69% probability of paternity. The evidence that plaintiff and N.T. had their samples taken at a Micro Diagnostics laboratory in Manhattan is uncontroverted. (R. at 26, 73.) Though the lab did not submit a chain of custody affidavit, it did certify the test result, including therein an affirmation from the Director that the "genetic specimens" came from the named individuals. (R. at 73.) No one suggests the samples were ever out of the lab's custody. Similarly, the evidence that New Jersey police took Thomas's DNA samples after his death, (R. at 25), and that the New Jersey State Toxicology Laboratory transferred the samples to Micro Diagnostics, (R. at 87), is not disputed. That the record lacks boilerplate documents confirming Thomas's samples' route from police custody to the toxicology lab does not knock the test from the realm of "clear and convincing evidence," especially here, where the eventual test result ridicules the possibility that N.T.'s sample might have been tested against a random sample misplaced within the state system. *See People v. McCutcheon*, 504 N.Y.S.2d 708, 708 (2d Dep't 1986) (chain of custody rule relaxed where evidence provides a "reasonable assurance" of consistency and lack of tampering); *People v. Porter*, 362 N.Y.S.2d 249, 254 (3d Dep't 1974) ("[W]here the circumstances provide reasonable assurances of identity and unchanged condition and it would be impossible or an unreasonable requirement to produce each physical custodian as a witness, there has been a relaxation of the [chain of custody] rule.").

Comparison to a case defendant cites is helpful. In *Barbara Ann W. v. David Wy.*, 701 N.Y.S.2d 845 (N.Y. Fam. Ct. 1999) (cited in Def. Mem. at 10-11), an action to vacate an order of

filiation, the Court found that a DNA test excluding the plaintiff as the child's father did not constitute clear and convincing evidence of a lack of paternity.  An assistant producer for the "Sally Jesse Raphael Show" with no medical training took the DNA samples in the parties' homes and sent them to the lab (also Micro Diagnositics), which rushed to complete a facially flawed report in time for a show about the paternity dispute.  *Id*. at 852-54.  The Court concluded there was insufficient evidence "to verify that the samples were truly taken from the necessary party and not provided by a friendly imposter."  *Id*. at 853.

The distinctions are instructive.  First, the DNA testing postures are reversed: whereas in *Barbara Ann* the purported father could skew the test in his favor by substituting the sample of any random "imposter," *id*., here the imposters would need to be chosen brilliantly (by the New Jersey technicians or by plaintiff, or maybe both) to engineer the three-pronged family footprint shown in the test result.  (R. at 73.)  Secondly, the chain of custody evidence in this case does not contain *Barbara Ann*'s red flags.  Unlike the situation with the assistant producer turned untrained lab technician, there is no reason to doubt the evidence that plaintiff and N.T. had their samples taken at Micro Diangostics, (R. at 26, 73); indeed, the examining ALJ declined to ask more than a pair of cursory questions on the subject.  *See Pratts v. Chater,* 94. F.3d 34, 37 (2d Cir. 1996) ("the ALJ, unlike a judge in a trial, must herself affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding") (citation omitted).  Nor is there reason to doubt that the sample New Jersey transferred to Micro Diagnostics was Thomas's.  (R. at 87.)  In short, formalisms aside, the record provides no "substantial evidence" that the DNA test was anything other than conclusive proof of Thomas's paternity.  *See Giddings v. Astrue*, 333 F. App'x 649, 654-55 (2d Cir. 2009) (reversing for lack of substantial evidence ALJ decision that failed to undercut countervailing medical evidence); *cf*. N.Y. C.P.L.R. § 4518

(d) ("If . . . a genetic marker test or DNA test . . . indicates at least a ninety-five percent probability of paternity, the admission of such record or report shall create a rebuttable presumption of paternity.").

Defendant has protested that Judge Freeman invaded the ALJ's province by "erroneously re-weigh[ing]" the chain of custody evidence.  (Def. Obj. at 7.)  To be clear, the Court, like Judge Freeman, is not re-weighing anything.  Rather, applying the substantial evidence standard, the Court finds a lack of "such relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's conclusion that the DNA test result did not establish that Thomas was N.T.'s father.  *Richardson*, 402 U.S. at 401.  It is a matter of substantial evidence review, not re-weighing.

Defendant also argues that Judge Freeman erred in not addressing the ALJ's conclusion that plaintiff did not rebut the presumption of legitimacy.  (Def. Obj. at 9.)  Under the presumption of legitimacy, a child born during a marriage is presumed to be the biological product of the marriage.  *Fung v. Fung*, 238 A.D.2d 375, 375-76 (2d Dep't 1998).  Plaintiff was still legally married to a different man at the time of N.T.'s birth (though she had obtained a protective order against him 15 months earlier and had not lived with him for 20 months), so under this rule N.T. was initially presumed the ex-husband's child.  But as defendant admits, the presumption of legitimacy "may be rebutted by clear and convincing proof excluding the husband as the father or otherwise tending to prove legitimacy."  *Id*. at 376.  To argue the presumption here, then, is to restate the issue under a new name.  Judge Freeman found, and the Court agrees on *de novo* review, that the DNA test constituted clear and convincing evidence that Thomas was N.T.'s father.  By logic, and without even considering the substantiated rift in plaintiff's relationship with her ex-husband, the test clearly and convincingly excludes the ex-

8

husband by establishing a 99.69% probability that Thomas was the father.  The presumption of legitimacy is therefore rebutted.  *See Green v. Chater*, No. 94 Civ. 8404, 1995 WL 688918, at *2 (S.D.N.Y. Nov. 20, 1995) (reversing ALJ decision that plaintiff had failed to rebut the presumption of legitimacy).

Finally, the Court adopts Judge Freeman's recommendation to reverse the Commissioner's decision and remand for benefits calculation, rather than remanding for further evidentiary hearings.  While district courts often remand cases to the agency for further review, a district court may also reverse a Commissioner's decision.  *See* 42 U.S.C. § 405(g) (2008) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."); *Green-Younger v. Barnhart*, 335 F.3d 99, 109 (2d Cir. 2003) (reversing ALJ's decision without remanding for further hearings where ALJ relied on erroneous legal standard and evidence was not supported by substantial evidence). Further hearings are not warranted here because plaintiff has already proven by clear and convincing evidence that N.T. is Thomas's child.  *See Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004) (citing *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) ("where this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits")); *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000) (declining further remand because record provided sufficient proof to support plaintiff's claim).  Moreover, as plaintiff first applied for benefits in December 1999, the exceptionally long process she has endured also argues against remanding for further review. *See Butts*, 388 F.3d at 387 ("the hardship to a claimant of further delay" is relevant to remand decision); R. at 47-52.

## CONCLUSION

For the foregoing reasons, the Court adopts Magistrate Judge Freeman's Report and

Recommendation, reverses the Commissioner's decision, and remands the case to the

Commissioner for the calculation and awarding of benefits. The Clerk of the Court is requested

to close this case.

SO ORDERED.

Dated: New York, New York
      December 9, 2009

_____
      Richard J. Holwell
      United States District Judge